# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CAO LIGHTING, INC., <br><br> Plaintiff, <br><br> v. <br><br> OSRAM SYLVANIA, INC. and LEDVANCE LLC <br><br> Defendants. | C.A. No. 20-690-MN <br><br> **REDACTED VERSION** |

## PLAINTIFF'S OPENING LETTER TO THE
## HONORABLE SHERRY R. FALLON RE: DISCOVERY DISPUTES

Dated:  December 6, 2021

Respectfully submitted,

BARNES & THORNBURG LLP

Chad S.C. Stover (No. 4919)
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone:  (302) 300-3474
Facsimile:  (302) 300-3456
Email:   cstover@btlaw.com

Dear Judge Fallon,

These cases—consolidated for pre-trial purposes—concern Defendants' widespread infringement of U.S. Patent No. 6,645,961 directed to novel LED lighting technology developed by CAO Lighting, Inc.'s founder in the early 2000s. [*See, e.g.*, D.I. 66 at ¶¶ 11–24.][1] Pursuant to the Court's November 29, 2021 Oral Order, CAO Lighting, Inc. ("CAO Lighting") submits this letter brief in support of its motion to resolve four discovery disputes that have arisen with Defendants LEDVANCE, LLC ("LEDVANCE"), Consumer Lighting (U.S.), LLC d/b/a GE Lighting ("GE Lighting"), and General Electric Company ("General Electric").

***Scope of Accused LEDVANCE Products****:* LEDVANCE has refused to provide any discovery into potentially hundreds, if not thousands, of infringing products by unilaterally narrowing the definition of Accused LEDVANCE Products. This narrowing is unsupported and unsupportable.

In its Third Amended Complaint, CAO Lighting detailed how light bulbs sold and offered for sale by LEDVANCE infringe the '961 patent by, among other things, citing to LEDVANCE's then-current website and a 2017-2018 Sylvania LED Lamp Catalog for "***representative infringing examples***." [D.I. 66 at ¶¶ 32 (emphasis added).] Then, on April 1, 2021, CAO Lighting served its Supplemental Disclosure of Accused Products, in which it divided the Accused Products into two categories—Accused Sylvania LED Lamps ("Accused Lamps") and Accused Sylvania LED Luminaires ("Accused Luminaires"). [Ex. 1.] As to the former, CAO Lighting provided a list of categories and products and then cited both to the 2017-2018 Sylvania LED Lamp Catalog identified in the Complaint *as well as* a 2021 Lamp Catalog. [Ex. 1 at 2–5; Ex. 2 (2017-2018 Lamp Catalog; Ex. 3 (2021 Lamp Catalog).] For the Accused Luminaires, CAO Lighting cited to a 2017 Sylvania Luminaire Catalog and listed ordering information for products from that catalog. [Ex. 1 at 5–21; Ex. 4 (2017 Luminaire Catalog).] CAO Lighting further stated that the "Accused Products include all product numbers, model numbers, and SKUs . . . identified in the catalogs [], ***as well as any product numbers, model numbers, or SKUs for LED lighting products that are the same or substantially the same as those listed below.***" [Ex. 1 at 2 (emphasis added).]

On June 28, 2021, CAO Lighting served its supplemental and amended infringement contentions. [Ex. 5 (excerpted).] CAO Lighting included in that document the description of Accused Lamps and Accused Luminaires from its earlier identification. [*Id.* at 2–21 ] In addition, it attached infringement claim charts. In each chart, CAO Lighting provided a description of the Accused LEDVANCE Products to which the chart relates. For example, Ex. 1 concerns "products designated as A-Line lamps, or by reference to the letter 'A'—e.g., A15, A19, A21, A25." [Ex. 5 at 26.] CAO Lighting further stated:

> LEDVANCE presently offers a variety of infringing, Sylvania-branded A-Line Lamps through an online catalog dated 2021 found at: https://assets2.sylvania.com/media/bin/asset-11932843/asset-11932843. Previously, LEDVANCE offered infringing Sylvania-branded Aline Lamps through an online catalog dated 2017/2018 . . . .

[*Id.*] Similarly, in Ex. A, CAO Lighting described the Accused Luminaires:

---

[1] References to the docket are to *CAO Lighting, Inc. v. Osram Sylvania, Inc.*, C.A. No. 20-690-MN docket.

The Honorable Sherry R. Fallon
Page 2

> The accused infringing Sylvania-branded luminaires include: edge-lit panels, volumetric troffers, retrofit door kits, troffer retrofit kits, surface mount series, undercabinet lights and PenduLum, traditional and linear high bay, vapor tight, canopy, garage, slim floodlight, and wall pack series. The accused Sylvania-branded luminaires are identified by product description and corresponding item number as published by LEDVANCE in its Sylvania LED Luminaires catalog found here (https://assets2.sylvania.com/media/bin/asset-1378097) and Specifications Guide found here (https://assets2.sylvania.com/media/bin/asset-11468041).

[*Id.*] The Accused Product identification thus included LEDVANCE's website and four separate catalogs—two for Accused Lamps (2017-2018 and 2021) and two for Accused Luminaires (2017 and 2021).[2] The Accused LEDVANCE Products also "include[d] the same or substantially the same products as those identified in the referenced catalogs . . . ." [Ex. 5 at 22.]

Despite these clear disclosures, LEDVANCE has refused to provide discovery into the full scope of Accused Products. As to Accused Lamps, LEDVANCE has limited its discovery responses to those products listed in the 2017-2018 Lamp Catalog. [*See, e.g.*, Ex. 7 at 2 (limiting response to "products included on pages 4-24 of the 2017-2018 LEDVANCE product catalog").] For example, for common Interrogatory Nos. 1, 4, and 5, LEDVANCE excluded from its response at least 350 lamps from the 2021 Lamp Catalog. LEDVANCE has also limited its interrogatory responses and production of documents with respect to Accused Luminaires. It has refused to provide discovery into any luminaire that is not listed in the 2017 Sylvania Luminaire Catalog. For example, it has provided no information on the UltraLED$^{TM}$ Edge-Lit Panels (e.g., 6146, 61604, etc.) shown in the 2021 Catalog—even though CAO Lighting both (i) identified this catalog and (ii) these products are the same or substantially the same as the Edge-Lit Panels that CAO Lighting identified from the earlier 2017 catalog.[3] Still further, while its financial documents may cover the entire relevant period for damages (Sept. 2014–Aug. 2021), they are missing information for any Accused LEDVANCE Product that, for example, LEDVANCE introduced after the 2017 catalogs were published.

LEDVANCE's refusal to provide discovery into Accused Products specifically identified by CAO Lighting in June 2021 is inexcusable. Moreover, LEDVANCE's discovery responses exclude any untold number of products that do not appear in any of the four catalogs cited and which CAO Lighting has no means to identify. As this Court has previously recognized, the proper scope of discovery is **not** limited "only to those products that a plaintiff specifically accuses of infringement

---

[2] Counsel for CAO Lighting found the 2021 Catalog [Ex. 6] on the internet. The only catalog regarding luminaires that LEDVANCE has produced in this case is a 2019 Catalog (LEDVANCE-CAO-0031315). Despite the production of this document, LEDVANCE has not produced information related to lighting products in that catalog.

[3] LEDVANCE has attempted to justify its limitation of Accused LEDVANCE Products based on a supposed agreement made by CAO Lighting's counsel. There is no such agreement. At the very outset of discovery, CAO Lighting clarified the scope of Accused Products, but specifically stated that CAO Lighting was not limiting Accused Products "to those specific products set forth in Defendants' respective catalogs." [Ex. 8.] CAO Lighting further reserved the right to identify additional Accused Products after reviewing LEDVANCE's catalogs and product listings. [*Id.*]

in its initial disclosures (or specifically accuses via supplementation thereafter)." *Invensas Corp. v. Renasas Elecs. Corp.*, 287 F.R.D. 273, 283 (D. Del. 2012) (granting in part motion to compel where "Defendant is in a far better position than Plaintiff to know of and gain access to those products."). "[T]o hold otherwise, 'the inherent purpose of discovery would be stymied by limiting all discovery requests to the infringement known by the patent holder during the early stages of litigation.'" *Invensas*, 287 F.R.D. at 283 (quotations omitted); *see also Epicrealm, Licensing, LLC v. Autoflex Leasing, Inc.*, Nos. 2:05–CV–163–DF–CMC, 2:05–CV–356–DF–CMC, 2007 WL 2580969, at *3 (E.D. Tex. Aug. 27, 2007) (refusing to limit discovery only as to products specifically named in contentions and holding "the scope of discovery may include products and services . . . reasonably similar to those accused in the [contentions]").

LEDVANCE should be compelled to answer interrogatories and produce documents as to the full scope of Accused Products, including products in the four cited catalogs as well as all products that are the same or substantially the same as products in those catalogs which LEDVANCE made, sold, offered for sale, or imported into the U.S. from September 2014 through August 2021.[4]

***Scope of Accused GE Products***: GE Lighting and General Electric (collectively, the "GE Defendants") have also deprived CAO Lighting of critical technical and damages-related discovery by redefining the scope of Accused GE Products.

CAO Lighting originally identified by category infringing products in its Identification of Accused Products and stated that Accused Products include "any LED bulbs, lamps, tubes, or modules having the same or substantially the same configuration as identified above." [Ex. 9.] On June 28, 2021, CAO Lighting served its supplemental and amended infringement contentions on the GE Defendants. [Ex. 10 (excerpted).] It attached to those contentions Ex. A, which listed the Accused GE Products CAO Lighting was able to identify based on the GE Defendants' then-present website. [Ex. 11 (identifying more than 1800 SKUs across ten categories.] CAO Lighting also reiterated that the "Accused Products further include the same or substantially the same products as those identified in Ex. A . . . ." [Ex. 10 at 2.]

The GE Defendants, nonetheless, have limited the definition of Accused GE Products to only those products identified on Exhibit A. As a result, they have not produced, among other things, ***any sales or other financial information for any products sold before 2016***. But there is no dispute that the GE Defendants, in fact, made, used, sold, offered for sale, or imported into the United States LED lighting products prior to 2016—whether they be A-ine, reflectors, tubes, infusion modules, corn cobs, downlights, etc. The GE Defendants simply refuse to provide discovery into these earlier products because CAO Lighting has not identified them by product name and SKU on Ex. A. As detailed above, this refusal should not be countenanced. The GE Defendants are exclusively in possession of the information and documents (such as catalogs) identifying the names and SKUs for historic products.

CAO Lighting requests that the Court order the GE Defendants to supplement their discovery responses to be inclusive of all lighting products that are the same or substantially the same as those products identified in Ex. A that were made, sold, offered for sale, or imported into the U.S.

---

[4] LEDVANCE has also objected to the definition of Accused LEDVANCE Products in connection with the 30(b)(6) notice CAO Lighting served on LEDVANCE.

The Honorable Sherry R. Fallon
Page 4

from September 2014 through August 2021.

**GE Defendants' Failure to Produce Financial and Valuation Documents**. The GE Defendants have failed to produce relevant documents responsive to Req. Nos. 5 and 6—more specifically, documents concerning any valuations performed or financial statements compiled as part of or related to General Electric's sales of the consumer lighting and commercial lighting businesses.

The GE Defendants have described how General Electric divested its lighting businesses in 2019 and 2020. [Ex. 12 (excerpted) at 4.] In connection with the sale of these businesses, the GE Defendants compiled certain financial data related to the value of the LED lighting products. For example, ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌]⁵ He further revealed that the GE Defendants ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ [*Id.* at 57–58.] None of these documents have been produced by the GE Defendants.⁶

Despite the fact that documents reflecting the GE Defendants' understanding of the value of the LED lighting businesses (which is comprised of the Accused Products) may assist in determining what the GE Defendants would pay for a license to the patent-in-suit, these documents have not been produced. The GE Defendants should be compelled to produce any valuations of the LED lighting businesses compiled at or about the time of the divestitures.

**General Electric Refusal to Designate a 30(b)(6) Witness**. On the basis that the company has no information, General Electric has refused to designate a witness to testify regarding more than thirty-six topics. [Ex. 14, Ex. 15.] These topics include, but are not limited to, topics concerning the structure of the Accused Products, the manufacturer of the Accused Products, specifications for the LED chips used in any Accused Product, efforts to design around the patent-in-suit, demand for the Accused Products, and financial records concerning the Accused Products. [*Id.*]

General Electric, however, has a duty to undertake a reasonable investigation to determine the corporation's knowledge. For example, "it is defendant's responsibility to prepare its Rule 30(b)(6) designee 'to the extent the matters are reasonably available, whether from documents, *past employees*, or other sources.'" *Berwind Prop. Grp. Inc. v. Env't Mgmt. Grp., Inc.*, 233 F.R.D. 62, 65 (D. Mass. 2005) (emphasis added and quotations omitted). Here, General Electric has not contended that it has reached out to former employees or reviewed documents to assess what information can be gathered on the relevant topics. Moreover, to the extent that a reasonable investigation reveals that General Electric truly has no corporate knowledge, it should designate a witness to so state under oath or propose a stipulation.

Based on the foregoing, CAO Lighting requests that the Court compel General Electric to designate a witness on Topic Nos. 1–10, 12, 14–20, 28–35, 37, 40–43, 45, and 47.

---

⁵ Mr. Halmay, one of GE Lighting's 30(b)(6) designees, ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ [*See* Ex. 13 at 34–36.]

⁶ Counsel for GE Lighting inappropriately instructed Mr. Halmay not to answer numerous questions related to these documents during the 30(b)(6) deposition. [Ex. 13 at 46–52, 57–60.]

The Honorable Sherry R. Fallon
Page 5

                                                                                  Respectfully submitted,

                                                                                   Chad S.C. Stover

cc:  Counsel of Record (via CM/ECF)