13:12:40

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CAO LIGHTING, INC., Plaintiff,

v.

OSRAM SYLVANIA, INC., et al., Defendants.

C.A. No. 20-690(MN)

CAO LIGHTING, INC., Plaintiff,

v.

GE LIGHTING, INC., et al., Defendants.

C.A. No. 20-681(MN)

Thursday, December 16, 2021
2:00 p.m.
Teleconference

844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE MARYELLEN NOREIKA
United States District Court Judge

APPEARANCES:

BARNES & THORNBURG
BY: CHAD S.C. STOVER, ESQ.
BY: TODD G. VARE, ESQ.
BY: JEFFREY MORGAN, ESQ.
BY: HEATHER B. REPICKY, ESQ.

Counsel for the Plaintiff

McCARTER & ENGLISH
BY: DANIEL M. SILVER, ESQ.

-and-

NORTON ROSE FULBRIGHT
BY: ARTHUR LICYGIEWICZ, ESQ.

Counsel for Defendants
General Electric and
General Electric Lighting

SHAW KELLER LLP
BY: KAREN KELLER, ESQ.

-and-

SHEARMAN & STERLING
BY: PATRICK COLSHER, ESQ.

Counsel for the Defendant
Osram Sylvania, Inc.

MORRIS NICHOLS ARSHT & TUNNELL, LLP
BY: RODGER SMITH, ESQ.

-and-

GOODWIN PROCTER LLP
BY: SRIKANTH K. REDDY, ESQ.
BY: BRIAN T. DRUMMOND, ESQ.

Counsel for the Defendant Ledvance

APPEARANCES (Cont'd):

MORRIS JAMES, LLP
BY: CORTLAN S. HITCH, ESQ.

-and-

BROOKS KUSHMAN
BY: THOMAS CUNNINGHAM, ESQ.

Counsel for the Defendant

\- - - - - - - - - - - - -

13:53:29

13:59:33 THE COURT: Good afternoon, counsel. Who is

13:59:41 there, please?

14:02:42 MR. STOVER: Good afternoon, Your Honor. This

14:02:43 is Chad Stover from Barnes & Thornburg for plaintiff, CAO

14:02:50 Lighting. And with me are Todd Vare, Jeffrey Morgan and

14:02:54 Heather Repicky, all of Barnes & Thornburg.

14:02:57 THE COURT: All right. Good afternoon.

14:03:04 MR. SMITH: Good afternoon, Your Honor. This is

14:03:06 Rodger Smith at Morris Nichols for defendant, Ledvance. I

14:03:09 have with me Srikanth Reddy and Brian Drummond from Goodwin

14:03:14 Procter.

14:03:14 THE COURT: Good afternoon to all of you.

14:03:16 MR. SILVER: And, Your Honor, it's Dan Silver

14:03:19 from McCarter & English on behalf of the GE Electric. And

14:03:23 I'm joined by Art Licygiewicz from Norton Rose Fulbright.

14:03:25 THE COURT: Good afternoon to all of you as

14:03:27 well. So we received the latest request for a discovery
14:03:32 conference --

14:03:32 MS. KELLER: Your Honor, Karen Keller. I
14:03:34 apologize for interrupting. I wanted to enter an appearance
14:03:38 on behalf of Osram. And with me is Patrick Colsher from
14:03:43 Shearman & Sterling. Sorry about that.

14:03:45 THE COURT: That's okay. Anyone else that I
14:03:48 missed?

14:03:48 MR. HITCH: Yes, Your Honor. On behalf of
14:03:51 Current Lighting it's Cortlan Hitch from Morris James. And
14:03:52 joining me on the call is Thomas Cunningham from Brooks
14:03:55 Kushman.

14:03:55 THE COURT: Okay. Thank you. Good afternoon.
14:03:57 Anyone else?

14:04:00 All right. So as I was saying, we received the
14:04:04 latest request for a discovery conference in the cases that
14:04:09 we have involving the different parties. The parties have
14:04:12 been in front of the Court four times already and on top of
14:04:16 that we got a request that there are another five current
14:04:20 disputes and that seems like it is wholly excessive for the
14:04:29 case and it seems to suggest that we are not dealing with
14:04:32 reasonable counsel or reasonable clients if we have that
14:04:35 many disputes. It is excessive and it is abusing the
14:04:42 resources of the Court to come so many times before us and
14:04:45 not work these things out.

14:04:47 So we're going to do two things. One, you can tell me on the phone today what the issues are, right now, and I'll let you know if they merit a ruling.

14:04:56 And I wanted to get you on the phone to tell you that if there is another request for a dispute conference in fact or expert discovery that I have to hear, that I will consider appropriate sanctions if I think the parties are being unreasonable, and those sanctions may include payment of money, loss of pages in briefing summary judgment motions, loss of the privilege of having the Court entertain summary judgment motions, and loss of trial time.

14:05:27 So you're on notice, if this continues and the parties can't be reasonable, there may be a price to pay.

14:05:35 So we have five issues that were raised in the e-mail about this. So let's go through them one by one.

14:05:50 MR. CUNNINGHAM: Your Honor, this is Tom Cunningham on behalf of Current Lighting. This was my request and I will note this is the first time Current has been before the Court on a discovery issue.

14:06:02 THE COURT: Doesn't matter. Doesn't matter. I don't really care. I want all of these things --

14:06:07 MR. CUNNINGHAM: Well --

14:06:08 THE COURT: Stop. I want all of these issues, they should have been raised, so just get on with it and tell me what your issues are.

MR. CUNNINGHAM: The first one is we want the manufacturing invoices for the Dynasty products which are CAO's products in this case. As you know, marking is a huge issue in this case. There has already been two dispositive motions filed on it. It has a substantial impact on the market. And CAO in its interrogatory responses on contentions on marking had said that it didn't mark until mid 2009, and then in 2009 on a certain date of an engineering change request it marked everything afterwards. And we want the manufacturing invoices to look at when CAO made the particular products. For instance, if the day before that change request they received a hundred thousand of a product which was unmarked, it then continued to sell those for the next five years, and I'll note, we have purchased products from the marketplace from a number of CAO's customers that purchased them from -- I keep saying CAO, and I apologize, it should be CAO, from a number of CAO's customers who purchased them from CAO in 2013, '14, '15, none of them marked. We have not found --

THE COURT: Okay. Stop, stop. Let me hear what's the plaintiff's reason for not producing it? It seems reasonable.

MR. VARE: The manufactured invoices --

THE COURT: Could you start by telling me who you are so that we have a transcript that makes sense.

14:07:58 MR. VARE: Yes. My apologies, Your Honor. This is Todd Vare for CAO Lighting.

14:08:04 First, the manufacturer invoices go back about thirteen years at this point in time, twelve years at this point in time. It is extraordinarily burdensome to try to locate and produce --

14:08:20 THE COURT: Are you going to take the position that products sold after the date in 2009 when you say the documents, the manufacturing documents were marked, that any product sold after that date is marked or do you recognize that there will be products sold after that date that were not marked?

14:08:39 MR. VARE: Our position is -- and first, we have produced sales, detailed sales spreadsheet showing every Dynasty product sold to which customer going back to 2008. So we've produced that information. We have also produced summary reports of the two manufacturers that have made products since 2008 for CAO Lighting. The invoices themselves aren't going to prove anything, but yes, our position is beginning in approximately 2009, it became CAO Lighting's policy to mark the product packaging for its covered product, its Dynasty products. So some --

14:09:22 THE COURT: Stop. If that's the plaintiff's position, then I think it's fair to allow the defendants to challenge that. And so I am going to grant the request to

produce the invoices.

What's next? We have discovery responses served in lawsuits asserting the patent-in-suit. What's the issue there?

MR. CUNNINGHAM: Your Honor, this is Tom Cunningham again. This is standard, they have asserted this patent in multiple lawsuits. They obviously take positions in the lawsuits. We want to make sure they're not taking inconsistent positions on claim construction validity issues, on infringement issues, we just want to see what's going on in CAO's other cases. Those are admissions that are relevant --

THE COURT: What about if those contain third-party confidential information, for example, on infringement issues?

MR. CUNNINGHAM: Well, then those parties could object. I will say that one of the parties, TADD, has indicated that they don't have a problem with being produced as long as they're produced in the -- CAO did produce some of those. I let them know there is a few that we don't have. In the Feit case in California, they have not produced those, anything from the Feit case. Feit I'm confident will consent to our protective order after speaking with their counsel. But we can't seem to get them from CAO.

THE COURT: All right. Plaintiff.

MR. VARE: Again, Todd Vare.

THE COURT: Sounds like you produced some of it but not all of it.

MR. VARE: We have produced the vast majority. First of all, in the only other case which this particular patent-in-suit was filed, this is the Light Efficient Design case or LED, we have produced every written discovery response that we served in that case. We have also produced every single document that we served and produced in that case. We have produced every single expert report that was produced in that case by both sides --

THE COURT: Okay. Stop. But are there other discovery responses in the lawsuit that have not been produced?

MR. VARE: The only discovery responses that we have not produced have been in the cases that are ongoing right now, for example, what Current is asking for is that every time we serve a discovery response on GE or we serve a discovery response on Ledvance or we serve discovery responses on Feit that we're required to then turn around and produce those discovery responses to everyone else.

Second, they want every discovery response served on us by each of these defendants, so every time Feit serves a discovery response or supplements its response or

produces documents to us, they want us to turn around and produce those to --

THE COURT: Okay. Hold on. Hold on. So what I need to understand is other than the ongoing stuff, are there discovery responses from other lawsuits that have not been produced?

MR. VARE: No.

THE COURT: Okay. So Mr. Cunningham, I am not going to order that every time they get a discovery request in a case or they serve a discovery request in those cases that they give it to you. So what is it that you need?

MR. CUNNINGHAM: Well, can I get what's already been served because the discovery in Feit is almost done. I don't need the ones from Delaware and I told them that, I just want Feit. Feit and TADD. And I said there is a couple that seem to be missing from TADD, can you please provide those and I haven't heard back.

I will say there are a number of completed cases in Utah and they represent --

THE COURT: This is what we're going to do. Stop. Stop. I don't have all day. I'm just fitting you guys in. I don't need to hear every argument.

What we're going to do is if the discovery requests have already been served, they can be produced. If they haven't been served, that's it, we're done. We're not

going to keep doing some kind of supplement going forward. You need to go work out what is required and what is not.

Next request is refusal to produce communications relating to licensed -- communications with counsel which is held as privilege which CAO indicated it intends to use to support its assertion of marking. So what is that? I don't understand -- I don't understand how if documents are withheld, you think that they say that they're going to rely on them. So what's the story?

MR. CUNNINGHAM: Your Honor, they put them in the body of an interrogatory response on Monday and it shows that they talked about marking back in 2009-10, and we're concerned that they're going to try to use that to support the fact that they started marking in 2009-10, because look, we had discussions with counsel about that. I asked them --

THE COURT: Stop.

MR. CUNNINGHAM: -- two separate --

THE COURT: Stop. Stop. Find out if that's really what they're planning to do.

Plaintiff.

MR. VARE: No, Your Honor. This is Todd Vare. In responding to the interrogatory, they asked us to identify all documents that supported our marketing response. We identified tons of documents that supported our allegations and contentions regarding marking. One of

14:14:58 those documents, one was a communication between in-house counsel and the client relating to marking. We identified it as you would identify it in a privilege log. We set forth the dates, the author, the recipients --

14:15:14 THE COURT: But you're not going to rely on that, you're not going to rely on that in any way, right, you're not going to put that in front of a jury and say we had discussions with counsel, right?

14:15:25 MR. VARE: No, we can -- I mean, no, we're not relying on that particular document.

14:15:30 THE COURT: Why did you include it?

14:15:34 MR. VARE: Because it was included as part of our obligation to provide, you know, a privilege log.

14:15:41 THE COURT: I'm sorry, I thought --

14:15:43 MR. VARE: We identified --

14:15:44 THE COURT: I thought that Mr. Cunningham said that you put it in an interrogatory response.

14:15:50 MR. VARE: Right. We simply included it in almost like a tabular -- in a table format in the context of an interrogatory response to identify it as a privilege document in response to interrogatory. We did not say in that response that we would rely upon that document, we just identified it. What they want us to do is withdraw the response which I don't think is appropriate. We haven't relied upon that document, we simply identified it as a

party would do in a privilege log.

THE COURT: All right. Mr. Vare, he just said they're not going to rely on it. Why do I care about this?

MR. CUNNINGHAM: Your Honor, this is Mr. Cunningham.

THE COURT: I'm sorry, Mr. Cunningham. Sorry about that.

MR. CUNNINGHAM: Your Honor, that sounds fine to me, but I have asked in two meet and confers and a letter and they won't respond, I just --

THE COURT: Okay. I'm done. I don't care at all about your discussions because your discussions have been ridiculous if you can't agree on these things.

Okay. CAO's refusal to produce communications relating to licensing negotiations and draft licensing agreements related to the patents-in-suit. I don't really see the relevance of negotiations of draft licenses given that, you know, you can ask for anything in a negotiation, that doesn't really matter, it only matters what you end up with, so why should licensing negotiations and draft licensing agreements be produced?

MR. CUNNINGHAM: Your Honor, this has been an issue in numerous cases. They're relying on litigation based licenses and -- at least they did in the TADD case in the report that we just received and all of these

litigation-based licenses, the Federal Circuit has said -- then they kind of changed their tune and said they can't be relevant, but you have to look at the circumstances surrounding it. And that's what we want to look at is the circumstances surrounding it. Their own expert in the damages report --

THE COURT: I don't know what that means in terms of -- I don't know what that means in terms of negotiations and draft agreements. You say the circumstances surrounding it. You can say the circumstances surrounding it were you were suing them and they were about to go to trial, but why do you need the specifics of what, you know, was said and who it was said to?

MR. CUNNINGHAM: Well, Your Honor, suppose that in the negotiations the number, it's clear that the number is based on the amount of attorney -- litigation costs and has nothing to do with the reasonable royalty, you would not see that in the final agreement. But then they put language in the agreement that says yeah, this relates to a royalty. We should be able to delve into that and look at those things as far as negotiations.

THE COURT: All right. I am going to deny that request. I think it's too tangental at this point and too hypothetical.

Next, we have refusal to produce communications

14:19:07 with third parties relating to assertions of infringement of the patents-in-suit. Is this different from the discovery responses?

14:19:18 MR. CUNNINGHAM: It is. They produced the letters they sent, they didn't produce anything anybody responded to, so if people responded to prior art, if they had further discussions with CAO and CAO made admissions as to infringement or prior art or claim constructions, we're entitled to know. They can't just produce one half of the communications and not the other side.

14:19:38 THE COURT: Well, let me ask, how are these communications going to be used at trial? I mean, I am kind of missing out on the relevance of the communications and how they would be used. So tell me that.

14:20:00 MR. CUNNINGHAM: Well, typically when you get into -- when you get into a negotiation, the parties may talk about disputes regarding the scope of the claims, the parties may talk about disputes regarding invalidity. Defendants may bring up prior art and say this is --

14:20:19 THE COURT: Wait a second. That's not my question. My question is, you have these letters that they sent out to a bunch of people saying we think you have used our patents. You're complaining you don't have the other people's work telling them why they thought that the patents were invalid or whatever. And you have to litigate your own

case here. So what I'm trying to figure out is, is there any way that these letters that they're sending out saying all these people infringe are going to be used at trial so that I can understand whether you need this other information? So what is the point --

MR. CUNNINGHAM: Okay. Say a defendant responds on a piece of prior art and then CAO again responds to that and says no, the claims don't cover that, the claims aren't that broad that would cover that prior art, all we have is the first letter. There may be ten letters with these people. We don't know. So if they made admissions as to claim scope or anything to try and get a settlement from a third party, those admissions could be used at trial to limit their infringement allegations against the defendants.

THE COURT: I am going to deny this request. I think it is overly broad, unduly burdensome and only hypothetically tangentially relevant.

Anything else that's out there that we need to discuss?

MR. CUNNINGHAM: I think that was all from our standpoint, Your Honor, yes.

THE COURT: All right. Anyone else have anything, because otherwise, and it has to be something that was met and conferred on, because otherwise the next discovery request is going to result in potential for

sanctions on somebody. Anything?

MR. VARE: This is Todd Vare for CAO Lighting. We are still in the process of meeting and conferring on some discovery deficiencies, but nothing to raise to Your Honor today.

THE COURT: All right. Well, you better try to work those out on both sides because I do not want to hear it. That would be the sixth time that I have been asked to have a discovery conference in this case and that is ridiculous. So get your local counsel on the phones and everybody start being reasonable because this is unacceptable the way this case is being litigated.

Anything else? All right. Everyone, thanks very much. Have a good rest of the week.

(Teleconference concluded at 2:22 p.m.)

I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

/s/ Dale C. Hawkins
Official Court Reporter
U.S. District Court