IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CAO LIGHTING, INC., <br><br> Plaintiff, <br><br> v. <br><br> GENERAL ELECTRIC COMPANY, CONSUMER LIGHTING (U.S.), LLC d/b/a GE LIGHTING, and CURRENT LIGHTING SOLUTIONS, LLC, <br><br> Defendants. | C.A. No. 20-681-GBW <br><br> UNSEALED 6/22/2023 |
| CAO LIGHTING, INC., <br><br> Plaintiff, <br><br> v. <br><br> OSRAM SYLVANIA, INC., and LEDVANCE LLC, <br><br> Defendants. | C.A. No. 20-690-GBW <br><br> UNSEALED 6/22/2023 |

## MEMORANDUM ORDER

Before the Court are Plaintiff CAO Lighting, Inc.'s ("Plaintiff" or "CAO") Emergency Motion to Strike/Exclude Defendants' New, Unpled, and Untimely Equitable Conduct Claim (C.A. No. 20-681, D.I. 423; C.A. No. 20-690, D.I. 382, the "Motion to Strike") and Defendants General Electric Company, Consumer Lighting (U.S.), LLC d/b/a/ GE Lighting, Current Lighting Solutions, LLC, Osram Sylvania, Inc. and LEDVANCE, LLC's (collectively, the "Defendants") Cross-Motion to Conform to the Evidence Under Federal Rule of Civil Procedure 15(b)(1) (No.

20-681, D.I. 426; No. 20-690, D.I. 385, 386, the "Motion to Amend"). For the following reasons, the Court GRANTS CAO's Motion to Strike and DENIES Defendants' Motion to Amend.

## I. BACKGROUND

CAO initiated patent infringement lawsuits alleging Defendants infringe U.S. Patent No. 6,465,961 ("the '961 patent").[1] Trial has been split into three phases. At the first jury trial, which was completed in February 2023 between CAO, Consumer Lighting (U.S.), LLC d/b/a/ GE Lighting and Current Lighting Solutions, LLC (C.A. No. 20-681), the jury returned a verdict in favor of CAO, awarding $2 million as damages for infringement and finding the '961 patent not invalid. D.I. 408. The second jury trial between CAO, Osram Sylvania, Inc., and LEDVANCE, LLC (C.A. No. 20-690) is scheduled for April 2024. D.I. 419. In between those two jury trials, the Court will preside over a one-day bench trial on Defendants' inequitable conduct and equitable estoppel counterclaims and affirmative defenses on June 14, 2023. D.I. 422.

In preparing for the bench trial, Defendants advised CAO that Defendants "intend to amend their counterclaims for inequitable conduct to include Dr. Cao's failure to disclose the Lumileds LEDs to the USPTO, although he admitted at trial (contrary to his deposition testimony) that he used them in the invention prototype and used a diagram of the chip in his patent application." D.I. 427-1, Ex. E. CAO ultimately filed the instant Motion to Strike, arguing that the Court should "(1) strike Defendants' new, unpled inequitable conduct claim based on the Lumileds system, and (2) preclude any argument or evidence at the bench trial or in post-trial briefing relating to such theory." D.I. 424 at 1. In opposing CAO's Motion to Strike, Defendants "pursuant to Federal Rule of Civil Procedure 15(b)(1), cross-move to conform their inequitable conduct affirmative

---

[1] Docket numbers identified herein refer to C.A. No. 20-681 unless otherwise noted.

2

defense and counterclaim to the evidence that previously was admitted during the February jury trial phase of the GE/Current case." D.I. 427 at 1.

## II. LEGAL STANDARD

Rule 15(b)(1) provides, "[i]f, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence."

Rule 15(b)(2) provides, "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue."

## III. DISCUSSION

Defendants argue that they are entitled to amend their pleadings because "[d]uring the [first] jury trial, Dr. Cao admitted for the first time that he had purchased prior art Lumileds LEDs, used them in a prototype, and included a drawing of them in his patent applications"—testimony that Defendants argue "contradicted his prior deposition testimony, in which he swore he instead had used LEDs from one of his own companies for his prototype and claimed not to remember anything about Lumileds LEDs." D.I. 427 at 1.

Defendants stretch Dr. Cao's deposition and trial testimony beyond their text. At deposition, Dr. Cao identified three prototypes that he had developed: an LED dental curing light

3

prototype and two general lighting prototypes. D.I. 424-6, Ex. 6 ("CAO Dep. Tr.") at 24:1–25:12.[2] Dr. Cao stated that the LEDs in at least one of his general lighting prototypes were from "[GVO]," CAO Dep. Tr. at 24:10–25:12; D.I. 428-2, Ex. 9 (errata). When asked whether he remembered "anything about the structure of the LED chips that are used" in the other general lighting prototype, Dr. Cao testified that he did not remember, but that the "LED chip for this prototype purchased from the vendors in China." CAO Dep. Tr. at 27:7-18. Dr. Cao also answered, "I don't remember" when asked whether he had provided "any specifications to the vendor to create these LED chips" and whether he had "any documents that reflect the structure designed in these LED chips." *Id.* at 27:20-25. When asked specifically about a "Lumileds P.O." entry in his calendar, he testified that the entry was related to "a blue color LED we used for dental curing light." *Id.* at 30:8–13. When asked whether he was "purchasing those LEDs from Lumiled," Dr. Cao testified "I don't remember," though acknowledged that he was familiar with the company. *Id.* at 30:14-19.

> At trial, Dr. Cao testified:
>
> > Q. You see it says Lumiled PO, correct?
> > A. Correct.
> > Q. And the PO there, initials, refers to purchase order, correct?
> > A. Correct.
> > Q. And do you see the check marks in the left column?
> > A. Yes.
> > Q. And that check mark means that you submitted a purchase order to Lumileds; true?
> > A. It's true.
> > Q. And that purchase order refers to the purchase of Lumileds' LEDs, correct?
> > A. Correct.

---

[2] The parties do not dispute that the LED dental curing light prototype does not concern the invention claimed in the '961 patent.

4

Q. And those were high-powered Lumileds LEDs, correct?
A. It's a Lumiled LED.
Q. Those were high-powered Lumileds LEDs, correct?
A. It was a Lumiled LED.
Q. Were they high power?
A. I don't remember exactly what power that would be.
Q. Okay. I think you testified that you used these LEDs in your curing light, correct?
A. Yes, we used a Lumiled LED to build our prototypes as well.
Q. So your prototypes for your dental curing lights were not high power?
A. It is high power with multiple chips.
Q. Okay. But you don't know if it was high power for a single LED?
A. I do not remember exactly.
Q. You don't remember, okay. Do you see any entry there for a GVO PO?
A. No, I do not.
Q. Now, I'm going to put PTX26 A. And is that the prototype for your curing device?
A. Yes.
Q. Are those the same LEDs in both devices, Dr. Cao?
A. They look similar.
Q. Is it fair to say that you used Lumileds LEDs in 26 B 17 and C and not the LEDs from GVO?
A. I cannot say that because I need to look at – look at the record, I don't have the record which LED I used.
Q. But you testified that you used GVO. In fact, just a few minutes ago you said definitively that you used a – the GVO LED was in your prototypes, correct?
A. I used GVO LED for the prototypes. I may also use a Lumiled LED for prototype as well.
Q. I believe for these ones you said you used GVO; do you recall that testimony a few minutes ago?
A. I did not say I used the GVO, I said the GVO – you asked me the question if I was the owner, founder of GVO, I said I -- yes, I did.
Q. I also asked you if you used GVO LEDs in your prototype and you said you did.
A. If I said yes, I did.

Q. Okay. Dr. Cao, I am going to do a magnification of this LED so we can look at it more up close. And this is going to be of PTX26 B.

. . .

Q. Dr. Cao, do you recognize that LED?
A. It is a LED chip.
Q. Do you recognize it as the LED chip that you put in your patent?
A. At that time I did not do the enlargement as we did today.
Q. My question is: Do you recognize that as the chip which you put into your patent?
A. Yes.
Q. So you put the Lumileds chip diagram in your patent, correct?
A. I put the diagram in my patent, but at the same time I put a lot other diagrams in that patent as well.
Q. Okay. Were you involved at all in the development of the Lumileds chip?
A. I'm not associated with Lumiled.
Q. So the answer would be no?
A. (No response.)
MR. CUNNINGHAM: Could you put up the patent JTX5000. Go to column 1, lines 23.
BY MR. CUNNINGHAM:
Q. Now, you told the Patent Office, Dr. Cho -- Cao, that typical prior art LED modules lack high intensity due to the size of the LED chips used, correct?
A. Correct.
Q. And then you presented numerous drawings of an LED that you purported to invent, correct?
A. Those are examples and the patent --
Q. It's a yes or no question, sir.
A. Say the question again, please.
Q. You told the Patent Office that the prior art was low-intensity LEDs, right?
A. Yes.
Q. Okay. And then you presented pictures and diagrams of your purported invention of a different LED, right?
A. In my invention I gave --
Q. It's a yes or no question, sir.

> THE COURT: You have to answer his question first, and then if you need to elaborate you can.
> THE WITNESS: Okay. Yes.

D.I. 427-1, Ex. A ("Trial Tr.") 292:4-296:3.

The Court discerns no contradiction giving rise to Rule 15(b) relief. In fact, Dr. Cao's trial testimony confirms what he told Defendants at deposition—that is, Dr. Cao had LEDs from both GVO and Lumileds in his possession before filing the '961 patent application; he purchased and used Lumileds LEDs in his dental curing lights; and used GVO LEDs for the general lighting prototypes related to the invention claimed in the '961 patent. Dr. Cao did not testify at trial that he purchased "high-powered prior art Lumileds LEDs" as Defendants represent. D.I. 427 at 1 (citing Ex. A [Trial Tr. Feb. 13, 2023] at 291:13-292:20).[3] Accordingly, permitting Defendants' proposed amendments over CAO's objection will not "aid in presenting the merits." FED. R. CIV. P. 15(b)(1).

Further, CAO has satisfied the Court that permitting Defendants' amendment "would prejudice [CAO's] action or defense on the merits." *Id.* As CAO contends, "CAO Lighting had no reason to (1) depose Daniel McCarthy the attorney who prosecuted the '433 patent regarding the Lumileds LEDs, (2) have its technical experts analyze whether the LEDs in Dr. Cao's prototype are even Lumileds LEDs, (3) seek discovery of factual evidence contrary to Defendants' theory, such as the similarity of Lumileds LEDs to other LEDs, and (4) consider

---

[3] Curiously, when Defendants pointed the Court to the trial transcript that purportedly support their argument that "Dr. Cao testified that prior to submitting his original patent applications, he had purchased high-powered prior art Lumileds LEDs," D.I. 427 at 1, Defendants omit from their citation Dr. Cao's testimony in which, after asked whether the Lumileds LEDs he used were high-powered, he testified that he didn't "remember exactly what power that would be." Trial Tr. 292:21-22.

whether to engage an expert regarding Patent Office disclosure requirements." D.I. 424 at 3. Defendants' written submissions leave these issues unaddressed. And a continuance under the circumstances would not be appropriate given that the Court has promptly sought to schedule this bench trial so that final judgment may be entered in the first jury trial. D.I. 419; FED. R. CIV. P. 15(b)(1). Accordingly, the Court denies Defendants' motion under Rule 15(b)(1).

Defendants' arguments fare no better under Rule 15(b)(2). Inequitable conduct has not yet been tried. Although Defendants argue that "CAO Lighting's repeated acknowledgements during the jury trial that the Lumileds issue relates to inequitable conduct amounts to 'implied consent'," D.I. 427 at 3, the Court cannot infer CAO's consent to Defendants raising a new theory of inequitable conduct simply by objecting to Defendants' line of questioning—objections that this Court sustained. Trial Tr. at 335:20-337:9. Accordingly, the Court denies Defendants' motion under Rule 15(b)(2).

Finally, Defendants' conduct does not help their cause. Since alerting CAO of their proposed amendment, Defendants consistently took the position (including in their Joint Proposed Pretrial Order filed with the Court) that their amendment was permissible under Rule 15(b)(2). *See, e.g.*, D.I. 424-1, Ex. 1; D.I. 425 at 29-30 ("If CAO Lighting objects to Defendants' use of such evidence and introduction of such testimony on the basis that it was not addressed in Defendants' pleadings, then Defendants will move pursuant to Federal Rule of Civil Procedure 15(b)(2) to conform their pleadings to the evidence."). When CAO advised Defendants that it would oppose any amendment and would move to move to strike any such unpled claims and related argument or evidence, D.I. 424-7, Ex. 7, Defendants changed course: "Defendants do not intend to follow the letter briefing process. This is not a motion for leave to amend; it is a filing under Rule 15(b)(1) to conform the pleadings to the evidence that already came in during the jury trial, purely in

8

response to the objection represented by CAO's motion to strike." D.I. 424-7, Ex. 7.[4] Defendants later faulted CAO—in a filing submitted to the Court—for "inexplicably fail[ing] to mention Rule 15(b)(1) and focus[ing] on Rule 15(b)(2)" in their Motion to Strike, D.I. 427 at 1, despite repeatedly identifying Rule 15(b)(2) as the purported basis for such amendment to both CAO and this Court. *See, e.g.*, D.I. 424-1, Ex. 1; D.I. 425 at 29-30. Ruling in Defendants' favor would condone such conduct, which this Court declines to do.[5]

For those reasons, Defendants' Motion to Amend is denied. As for whether Defendants may pursue their new Lumileds system inequitable conduct theory as raised in the Joint Proposed Pretrial Order, that theory and corresponding allegations "implicate entirely new and different instances of purported misconduct rather than buttressing the instances pled." *Chiesi USA, Inc. v. Aurobindo Pharma USA, Inc.*, C.A. No. 19-18756-ZNQ-LHG, 2022 WL 304574, at *3 (D.N.J. Jan. 9, 2022). Although Defendants claim they "seek to rely on this new evidence only to support of their *existing* defenses and counterclaims," D.I. 427 at 2,[6] that argument is not persuasive in view of Defendants' proposed amendments, which plainly seek to assert a new theory of inequitable conduct, D.I. 427-1, Ex. G-N. Accordingly, Defendants are precluded from

---

[4] Defendants wisely changed course and ultimately adopted the Court's letter briefing procedures.

[5] When the Court asked for an explanation during the pretrial conference, Defendants called the foregoing a "miscommunication," explaining they are "primarily moving under 15(b)([1]); however, we did conclude at the end in our papers the one paragraph that also addressed Rule 15(b)([2])." Pretrial Conference Transcript at 9:17-24 (May 30, 2023).

[6] Defendants' instant representation to the Court—that they merely seek to rely on new evidence to support existing defenses and counterclaims—is in tension with Defendants' earlier representation to CAO—that Defendants "intend to *amend their counterclaims* for inequitable conduct to include Dr. Cao's failure to disclose the Lumileds LEDs to the USPTO, D.I. 427-1, Ex. E (emphasis added).

introducing any argument or evidence at the bench trial or in post-trial briefing relating to an inequitable conduct claim based on the Lumileds system, and CAO's Motion to Strike is granted.

## IV. CONCLUSION

For the foregoing reasons, the Court grants CAO's Motion to Strike and denies Defendants' Motion to Amend.

\* \* \*

WHEREFORE, at Wilmington this \_9\_th day of June, 2023, **IT IS HEREBY ORDERED** that:

1. Plaintiff CAO Lighting, Inc.'s Emergency Motion to Strike/Exclude Defendants' New, Unpled, and Untimely Equitable Conduct Claim (C.A. No. 20-681, D.I. 423; C.A. No. 20-690, D.I. 382) is **GRANTED**.

2. Defendants General Electric Company's, Consumer Lighting (U.S.), LLC d/b/a/ GE Lighting's, Current Lighting Solutions, LLC's, Osram Sylvania, Inc.'s and LEDVANCE, LLC's Cross-Motion to Conform to the Evidence Under Federal Rule of Civil Procedure 15(b)(1) (C.A. No. 20-681, D.I. 426; No. 20-690, D.I. 385, 386) is **DENIED**.

3. Because the Memorandum Order is filed under seal, the parties shall meet and confer and, no later than seven (7) days from the date of this Memorandum Order, submit a joint proposed redacted version. In the absence of a timely request compliant with applicable standards, the Court will unseal the entire Order.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE